UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DAPHNEE BATEMAN, C.B. *a minor,* and JOSHUA BENDA, JR.<br><br>Plaintiffs,<br><br>v.<br><br>NISSAN MOTOR CO., LTD., NISSAN NORTH AMERICA, INC., and NISSAN OF KEENE, INC.<br><br>Defendants. | Civil No. 4:24-cv-13106-MRG |

**ORDER ON MOTION TO DISMISS [ECF. No. 7]**

**GUZMAN, J.**

Pending before the Court is Defendant Nissan of Keene's Motion to Dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. [ECF No. 7]. For the reasons stated below, the motion to dismiss, [ECF No. 7], is **DENIED**.

**I.    BACKGROUND**

Daphnee Bateman ("Bateman"), individually and on behalf of C.B., a minor, and Joshua Benda, Jr., (collectively, "Plaintiffs"), allege seven counts against Nissan Motor Co., Ltd. ("Nissan Motor Co."), Nissan North America, Inc. ("Nissan North America"), and Nissan of Keene, Inc. ("NOKI"). In essence, Plaintiffs claim that due to the negligent design and manufacture of Nissan Motor Co. and Nissan North America, as well as general negligence of NOKI, Bateman was caused severe, permanent, and debilitating quadriplegia and other injuries during a foreseeable automobile collision on December 19, 2021. [See Compl., ECF No. 1]. The only claim against NOKI

specifically is negligence (Count VII). [Id. at 19]. NOKI moved to dismiss for lack of personal jurisdiction. [Def.'s Mot. Dismiss, ECF No. 7; Def.'s Memo. Supp. Mot. Dismiss, ECF No. 8].

The following relevant facts are taken primarily from the allegations in Plaintiffs' Complaint, [Compl.], and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiffs' favor. Id.

### A. Relevant Facts

Plaintiffs are Massachusetts residents and were at the time of the incident. [Compl. ¶¶ 4-6]. Defendant NOKI is a corporation located in Swanzey, New Hampshire and organized under the laws of New Hampshire. [ECF No. 8 at 2]. The Complaint alleges NOKI's principal place of business was in New Hampshire. NOKI has not consented to the jurisdiction of this Court. [See ECF No. 7].

In the summer of 2021, Bateman received a recall notice in the mail regarding her 2004 Nissan Sentra's airbag system accompanied by an offer to perform a complimentary multi-point inspection. [Compl. ¶ 20; ECF No. 44 at 362]. The recall notice only provides the name "Nissan" with a logo. [ECF No. 22 at 4; ECF No. 44 at 362]. It identified a "Nissan Recall Team" and provided a phone number, which Bateman used to set up an appointment with Nissan of Keene. [ECF No. 22 at 4; ECF No. 44 at 362]. Plaintiffs allege that during this complimentary inspection, NOKI failed to conform to its duty of reasonable care and Bateman received her vehicle in a dangerous and defective condition. [Compl. ¶ 21].

On December 19, 2021, Bateman was operating her Nissan Sentra in Winchendon, Massachusetts when a collision occurred. [Compl. ¶ 16]. She alleges that in the crash sequence, her front driver-side airbag should have deployed, but it did not, and that the vehicle failed to meet other basic standards of protection, such as the absence of the Electronic Stability Control system (ESC), causing and/or exacerbating her severe and permanent disabling injuries. [Id. ¶¶ 23-29].

### B. Procedural History

Plaintiffs filed their Complaint on December 17, 2024. [Compl.]. Defendant NOKI filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) on February 21, 2025. [ECF No. 7]. Plaintiffs filed an opposition to the motion to dismiss on March 14, 2025. [ECF No. 22]. After holding oral argument on the 12(b)(2) motion, the Court entered a show cause order to determine the Court's personal jurisdiction over Defendant NOKI, permitting the parties to conduct limited jurisdictional discovery. [ECF Nos. 32-33]. Plaintiffs were limited to discovery requests regarding NOKI's targeted marketing and advertising to, and revenue generated from, Massachusetts residents. [ECF No. 33]. By August 26, 2025, the parties submitted their supplemental opposition to the motion to dismiss, reply, and relevant exhibits to the Court for review of the personal jurisdiction matter. [ECF Nos. 44-46].

### II.   LEGAL STANDARDS

A motion under Rule 12(b)(2) challenges the Court's authority to exercise personal jurisdiction over a defendant. In a 12(b)(2) motion, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)). "[A] district court 'may choose from among several methods for determining whether the plaintiff has met [their] burden.'" Vapotherm, Inc., 38 F.4th at 257 (quoting Adelson v. Hananel, 510 F.3d 43,

48 (1st Cir. 2007)). As the Court makes its determination without first holding an evidentiary hearing, the prima facie standard is applied. Motus, LLC v. Cardata Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022). Under the prima facie approach, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and construes them in the light most favorable to the plaintiff in determining the adequacy of their jurisdictional claim. Adelson, 510 F.3d at 48. The court will not, however, credit "conclusory allegations" or "conclusory averments" without "evidence of specific facts," and plaintiffs may not "rely on unsupported allegations in their pleadings." Blanding v. FedEx Ground Package Sys., Inc., 722 F. Supp. 3d 12, 15 (D. Mass. 2024) (first quoting Lin v. TipRanks, Ltd., 19 F.4th 28, 33 (1st Cir. 2021); then quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)). At this stage, facts brought forth by the defendant "become part of the mix only to the extent that they are uncontradicted." Adelson, 510 F.3d at 48.

The exercise of personal jurisdiction must be authorized by state statute and consistent with the due process requirements of the United States Constitution. Blanding, 722 F. Supp. 3d at 15. In assessing personal jurisdiction over a non-resident defendant, "a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994). Therefore, Plaintiffs must demonstrate that Massachusetts' long-arm statute grants personal jurisdiction and that it comports with the Due Process Clause of the United States Constitution. See Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009).

General jurisdiction exists "when [a foreign-state corporation's] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Blanding, 722 F. Supp. 3d at 15 (alteration in original) (quoting Goodyear Dunlop Tires

Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Here, as Plaintiffs acknowledge, NOKI is a New Hampshire corporation with a primary place of business in New Hampshire. [ECF No. 22 at 3]. Plaintiffs have neither explicitly pled nor raised factual allegations to suggest NOKI has affiliations so substantial that they could be considered comparable to a Massachusetts company. See Blanding, 722 F. Supp. 3d at 15. Therefore, general jurisdiction is inapplicable here.

Specific jurisdiction may be invoked where "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). The exercise of specific jurisdiction must still comport with due process and the Massachusetts long-arm statute.

### III. DISCUSSION

#### A. Massachusetts Long Arm Statute, Mass. Gen. Laws ch. 223A, § 3

The Massachusetts Long Arm Statute, Mass. Gen. Laws ch. 223A, § 3, outlines four avenues for a commercial entity to be subject to jurisdiction in Massachusetts. Here, Defendant NOKI argues that because it does not have a physical presence in Massachusetts, an affiliation with Massachusetts banks, or a state-wide marketing campaign in Massachusetts, then Plaintiffs cannot establish personal jurisdiction over the Defendant. The Court disagrees.

The Massachusetts Long Arm Statute provides in relevant part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . .

5

Mass. Gen. Laws ch. 223A, § 3. Plaintiffs allege that §§ 3(b), (c) and (d) are applicable and supply specific bases for jurisdiction.

Under 3(b), Massachusetts courts construe the phrase "in this commonwealth" to refer to "the place where the services or things are to be supplied, rather than the place of contracting." Droukas v. Divers Training Academy, Inc., 376 N.E.2d 548, 553 (Mass. 1978). Plaintiffs allege that NOKI's engagement in the "recall campaign" constituted "contracting to supply services or things in this commonwealth." [ECF No. 22 at 11]. They allege that NOKI willingly contracted with Plaintiff Bateman, knowing or being reasonably being aware that she was a Massachusetts resident based on the recall notice being delivered to her address, as well as her license plate and paperwork being in NOKI's possession at the time they agreed to do the recall work. [Id.]. However, Plaintiffs do not allege that any services supplied occurred in the Commonwealth of Massachusetts, and thus 3(b) is inapplicable.

Section 3(c) "is intended to apply only when the act [or omission] causing the injury occurs within [Massachusetts]." Hussain v. R.I. Hosp., No. 19-10513-PBS, 2019 WL 3546888, at *4 (D. Mass. June 12, 2019) (alteration in original) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)). Plaintiffs allege that the act or omission committed by NOKI, occurred during NOKI's recall inspection at their dealership located in Swanzey, New Hampshire. [See Compl. ¶¶ 20-21]. As there are no allegations that NOKI participated in any act or omission relating to this claim within Massachusetts, § 3(c) is inapplicable.

Section 3(d) applies when a defendant causes tortious injury in Massachusetts by an act or omission outside of Massachusetts, as long as the defendant "regularly does or solicits business, or engages in any other kind of persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. Laws ch. 223A,

6

§ 3(d). Plaintiffs allege that their injuries, which occurred in the town of Winchendon, Massachusetts, were caused by the negligence of NOKI during their recall inspection at their dealership located in Swanzey, New Hampshire. [Compl. ¶¶ 16, 21, 27]. Therefore, the tortious injury at issue in this case occurred *within* the Commonwealth by an action or omission *outside* the Commonwealth. Based on the pleadings, oral argument, and limited jurisdictional discovery, the Court notes that Section 3(d) is applicable to this case.

After conducting their jurisdictional discovery, Plaintiffs found that from August 27, 2008, to October 21, 2023, NOKI had substantial interaction with Massachusetts residents by providing regular auto services and vehicle sales to Massachusetts residents. [ECF No. 44 at 4-6].[1] Discovery documents show that between January 2016 and October 2023, NOKI sold approximately 2,400 vehicles to Massachusetts residents, which represented about one-fifth of NOKI's total sale of vehicles. [ECF No. 44 at 4]. Between August 2008 and October 2023, Massachusetts residents represented approximately 10% of NOKI's total service volume, (14% of NOKI's total income for the time period), **accruing over $2 million in income**.[2] [Id. at 5].

For purposes of § 3(d), the Court views this as *substantial revenue* derived from Massachusetts residents. Mark v. Obear & Sons, Inc., 313 F. Supp. 373, 375-76 (D. Mass. 1970) (holding that under § 3(d) whether revenue is "substantial" depends on the dollar volume of sale in Massachusetts, not the ratio of sales in Massachusetts compared to the nonresident's total sale, and that sales in Massachusetts of $5,000 are substantial even though they only constitute 0.5% of

---

[1] The Court notes that there is a typographical error in Plaintiff's supplemental opposition to the Motion to Dismiss for the timeframe of this data. [ECF No. 44 at 5 ("August 27, 2028 to October 20, 2023")]. Based on the evidence provided via deposition testimony, the Court has confirmed that this date is meant to represent data from 2008 to 2023. [ECF No. 45 at 29:14-16 ("The period of time for the records you provided to us were from August 27th, excuse me, of 2008, to October 20th of 2023.")].

[2] The Court notes that Plaintiffs use "income" and "revenue" interchangeably in their arguments.

the nonresident's total sales); Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 219 (1st Cir. 1989) (explaining that "'substantial revenue' is not an absolute amount nor an absolute percentage of total sale"); see Barnes v. Merk & Co., 648 F. Supp. 3d 283, 290 (D. Mass. 2023) (holding that a plaintiff need "not describe the specific amount of revenue derived from Massachusetts" to adequately plead the substantial revenue requirement). The vehicles sold from the out-of-state location to Massachusetts residents were goods later used in Massachusetts. Therefore, NOKI derived substantial revenue from goods used in this Commonwealth.

Additionally, as noted by the parties, once a vehicle is purchased or serviced by NOKI, those consumers, regardless of their home-state, receive additional promotional offers for services. [ECF No. 44 at 5-6]. Put differently, these Massachusetts residents were added to a list in which NOKI would regularly solicit business. The deposition testimony from Charles Dupler noted that Massachusetts residents from 157 cities and towns sought and received services from NOKI, and the majority of these consumers shared the same hometown as the Plaintiffs in Winchendon, Massachusetts. [Id. at 5]. The marketing campaigns to solicit business from Massachusetts residents was not a one-off, irregular practice, but a persistent course of conduct performed by the out-of-state entity to entice Massachusetts residents to cross the border for vehicle purchase and repair.

For the stated reasons, the Court finds that Plaintiffs have satisfied their burden to establish the specific facts in the record to subject Defendant NOKI to specific personal jurisdiction under the Massachusetts Long Arm statute. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) ("Although the burden of proof is light, [the plaintiff] may not rely on the mere allegations of its complaint,but must point to specific facts in the record that support those allegations.")

B. **Due Process**

The Due Process Clause requires that to subject a nonresident defendant to jurisdiction within a state the defendant must "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). For specific personal jurisdiction, the constitutional analysis has three distinct prongs: relatedness, purposeful availment, and reasonableness. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008). As such, the plaintiff must establish: "(1) their claims directly arise out of or relate to the defendant's forum activities; (2) the defendant's forum contacts represent a purposeful availment of the privilege of conducting activities in that forum, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable; and (3) the exercise of jurisdiction is reasonable." Knox v. MetalForming, Inc., 914 F.3d 685, 690 (1st Cir. 2019).

*1. Relatedness*

Defendant NOKI argues that Plaintiffs fail to allege a causal relationship between their forum-based activities and Daphnee Bateman's injury. This is not the proper standard.

To satisfy the relatedness prong, plaintiffs must show a nexus between their claims and the defendant's forum-based activities. Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011). This is a "flexible, relaxed standard," and "requires only that the claim have a demonstrable nexus to the defendant's forum contacts." Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994); Knox, 914 F.3d at 691. A defendant "need not be physically present in the forum state" to engage in forum-based activities. N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005). The inquiry of whether

9

the forum conduct gave rise to the plaintiff's claims is not "a strict causal relationship" standard. Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. 351, 362 (2021).

Defendant's demand for an exclusively causal connection test is inconsistent with Supreme Court precedent. See Ford Motor Co., 592 U.S. at 362. Defendant NOKI's forum-based activities included the regular sale of vehicles to Massachusetts residents, the service of vehicles owned by Massachusetts residents, and marketing throughout the Commonwealth to previous customers via mail and email. [See, ECF No. 44 at 4-6]. The Defendant performed this consistent conduct over the course of fifteen years and represented a significant portion of Defendant's business. [Id.] The Defendant's forum-based activities do not need to be the cause of Plaintiffs' injury; there merely needs to be "an affiliation between the forum and the underlying controversy." Goodyear, 564 U.S. at 919. Here, the Defendant engaged in activity throughout Massachusetts, predominantly in the area where Plaintiffs were residents, [ECF No. 44 at 5], engaged in a direct service to Plaintiffs which aligned with its forum-based activities, [Compl. ¶ 21], and Bateman's injury allegedly arose from this direct contact.

For the reasons stated above, Plaintiffs have satisfied the relatedness prong under the Due Process Clause.

### 2. *Purposeful Availment*

Defendant argues that it did not purposefully avail itself to Massachusetts because it did not deliberately target its behavior toward the society or economy of Massachusetts through radio or television ads, nor did it engage in a broad direct mail campaign or send agents of NOKI to Massachusetts to solicit business. [ECF No. 46 at 10-11].

To satisfy the second prong, Plaintiffs bear the burden of demonstrating that NOKI "purposefully avail[ed] itself of the privilege of conducting business within the forum State, thus

10

invoking the benefits and protections of its laws." Knox, 914 F.3d at 691 (alterations in original) (quoting Hanson v. Denckla, 375 U.S. 235, 253 (1958)). The Court's primary focal points when considering purposeful availment are voluntariness and foreseeability. Astro-Med, Inc., 591 F.3d at 10. A defendant's contacts must be "voluntary and not based on the unilateral actions of another party." Adelson, 510 F.3d at 50. Defendant's contacts must be such that they could "reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). This is to ensure that jurisdiction is not premised on a defendant's "random," fortuitous," or "attenuated" contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). "The purposeful availment inquiry . . . focuses on the defendant's intentionality." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623 (1st Cir. 2001) (citation omitted).

Plaintiffs argue that NOKI's website and "strong social media presence" readily invites business with out-of-state consumers as evidence of its purposeful availment. [ECF No. 22 at 16]. A defendant's maintenance of a website available in the forum and allegedly accessed by the plaintiff there, absent accompanying evidence that the website specifically targets the forum or has resulted in the defendant's knowing receipt of substantial revenue from forum residents, is not enough to establish purposeful availment. Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 60 (1st Cir. 2020). Although these interactions may entice some Massachusetts residents to cross the border into New Hampshire, the existence of an online presence which is widely available from out-of-state locations is not enough to sustain personal jurisdiction over the Defendant. See A Corp. v. All. Am. Plumbing, Inc., 812 F.3d 54, 61 (1st Cir. 2016) (holding that "the mere availability of a passive website" cannot by itself subject a defendant to personal jurisdiction in the forum); Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 35 (1st Cir. 2010) (noting that the running of a "website that is visible in a forum and that gives information about a company and its

products" cannot alone support the exercise of jurisdiction) (quoting McBee v. Delica Co., 417 F.3d 107, 124 (1st Cir. 2005)). Plaintiffs would need to prove that the Defendant continuously and deliberately exploited the Massachusetts market, deriving substantial revenue from their online platforms. See Plixer Int'l v. Scrutinizer GmbH, 905 F.3d 1, 10 (1st Cir. 2018) (holding that a foreign company could reasonably anticipate the exercise of specific personal jurisdiction based on U.S. contracts which "yielded nearly $200,000 in business over three-and-a-half years"). At this juncture, Plaintiffs have not provided evidence of this level of continuous and deliberate exploitation specific to Massachusetts residents via their website and online platforms.

However, Plaintiff has proven through its jurisdictional discovery that NOKI had a continuous relationship with the Massachusetts economy over a fifteen-year period, deriving substantial revenue from vehicle sales and auto services, and maintains ongoing communications with Massachusetts residents after services are provided. [ECF No. 44 at 4-6]. NOKI contracted with several thousand Massachusetts customers to sell vehicles, representing over two million dollars in revenue. [See ECF No. 44-8]. The relationship with NOKI and Massachusetts cannot be described as "random, fortuitous, or attenuated . . . ." Burger King, 471 U.S. at 475.

NOKI can be hailed into this Court's jurisdiction because it is reasonably foreseeable for a Massachusetts court to do so, particularly in a negligence action regarding a vehicle service repair. NOKI's ongoing forum relationship is based on auto repairs and sales for Massachusetts customers, and the headquarters is in close proximity to the Massachusetts border. [Compl. ¶ 9]. NOKI's relationship with Massachusetts is voluntary. Although it is Massachusetts drivers who cross the border to visit NOKI's headquarters, NOKI regularly accepts these customers and maintains communications with them after services are provided. [Dupler Dep., 61:10-62:12, ECF No. 45].

For the reasons stated, the Court believes that NOKI has purposefully availed itself to the Court's jurisdiction.

### 3. *Reasonableness*

Personal jurisdiction must also be reasonable, pursuant to the "Gestalt factors." Foster-Miller, 46 F.3d at 144. These factors are intended to ensure that the jurisdictional inquiry is not a mechanical, rigid exercise, and that courts consider the "fairness of subjecting a nonresident to the authority of a foreign tribunal." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Those factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Foster-Miller, 46 F.3d at 150. This inquiry "evokes a sliding scale: the weaker the plaintiff's showing on . . . [relatedness and purposeful availment] . . . the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of relatedness and purposefulness." Ticketmaster-N.Y., Inc., 26 F.3d at 210.

Here, there is an especially strong showing of reasonableness, which "fortif[ies]" the Due Process argument. Id. In fact, during oral argument on June 20, 2025, Defendant NOKI's counsel stated that reasonableness was not an issue in this case. [See ECF No. 32]. Defendant does not argue this issue of reasonableness in their supplemental pleadings. [See, ECF No. 46]. The defendant's burden of appearing in Massachusetts, at the Federal District Court sitting in Worcester, is minimal. The NOKI facility at issue is located in Swanzey, New Hampshire, approximately fifteen miles from the Massachusetts border, [Compl. ¶ 9], and within fifty miles

13

of this Federal District Court. Massachusetts has a substantial interest in torts involving their residents, particularly when the injury occurs due to tortious conduct within the state. Finally, pursuing a judicial remedy in Worcester can provide an effective relief to Plaintiffs' injuries and is convenient for both parties.

Therefore, exercising personal jurisdiction over NOKI does not offend the notions of "fair play and substantial justice," recognized in International Shoe, 326 U.S. at 320.

### IV.     CONCLUSION

For the reasons stated above, Plaintiffs have met their burden in establishing this Court's personal jurisdiction over NOKI. Therefore, Defendant Nissan of Keene's 12(b)(2) Motion to Dismiss for lack of Personal Jurisdiction [ECF No. 7] is **DENIED**.

**SO ORDERED.**

Dated: September 29, 2025

    /s/ Margaret R. Guzman
Margaret R. Guzman
United States District Judge